FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2012 OCT 25 PM 2:53
CLERK R. Ash
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

LAURA A. LEE, )
)
    Plaintiff, )
)
v. )    CIVIL ACTION NO.: CV212-086
)
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
    Defendant. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

    Plaintiff contests the decision of Administrative Law Judge G. William Davenport ("the ALJ") denying her claim for period of disability and disability insurance benefits. Plaintiff urges the Court to reverse and remand the ALJ's decision for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed.

    Plaintiff protectively filed an application for period of disability and disability insurance benefits on October 7, 2008, alleging that she became disabled on June 9, 2008. (Tr. at 154). Plaintiff alleged she became disabled due to common variable immunodeficiency. (Tr. at 158). After her claim was denied initially and upon reconsideration, Plaintiff filed a request for a hearing. (Tr. at 18). On April 7, 2010, the ALJ conducted a video hearing at which Plaintiff, who was represented by counsel, appeared and testified. (Tr. at 33–34). Dennis Conroy, an impartial vocational expert,

was also at the hearing. (Id.). The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. at 26). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 1–6).

Plaintiff, born on June 6, 1966, was forty-four (44) years old when the ALJ issued his final decision. She completed two and one-half years of college. (Tr. at 37). She also completed trade or vocational school in the area of computer technology. (Tr. at 163). Plaintiff has past relevant work experience as a head bookkeeper, office manager, child support officer, stock control clerk, and quality controller assistant. (Tr. at 26).

## ALJ'S FINDINGS

Pursuant to the Social Security Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R.

AO 72A
(Rev. 8/82)

§§ 404.1520(d) and 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset of disability, June 9, 2008, through the date of the ALJ's decision, July 9, 2010.[1] (Tr. at 20). At step two, the ALJ determined that Plaintiff had the following conditions considered "severe" under the Regulations: immunoglobulin (IGA) deficiency; fibromyalgia; hypothyroidism; cervical degenerative joint disease with spondylosis; degenerative disc disease; history of cardiomyopathy; migraines; asthma; and congestive heart failure. (Id.). However, at step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. (Tr. at 21). The ALJ found that Plaintiff had the residual functional capacity to perform work at the medium exertional level, with the following limitations: she can only occasionally climb ladders, ropes, or scaffolds; she can perform no more than frequent overhead reaching; she is precluded from work requiring more than frequent exposure to dust, fumes,

---

[1] Plaintiff's date last insured is December 31, 2012. (Tr. at 154).

3

smoke, chemicals, noxious gasses, or extreme cold; and she may experience mild to moderate pain. (Id.). At the fourth step, the ALJ determined that Plaintiff is capable of performing her past relevant work as a head bookkeeper, office manager, child support officer, stock control clerk, and quality controller assistant. (Tr. at 26).

## ISSUE PRESENTED

Plaintiff asserts that the ALJ made the following errors: (1) the ALJ erred by discrediting Plaintiff's testimony and Plaintiff's husband's affidavit both concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms; (2) the ALJ erred by discrediting two residual functional capacity evaluations performed by Plaintiff's treating physicians; (3) the ALJ erred by not finding Plaintiff disabled as a matter of law because of pain and other subjective symptoms; (4) the ALJ erred by not finding Plaintiff presumptively disabled under Listing 14.07; (5) the ALJ erred by finding that Plaintiff has the residual functional capacity to perform medium work with some specific limitations; and (6) the ALJ erred by finding that the Plaintiff's residual functional capacity does not preclude her from performing her past relevant work.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the

Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838–39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

**I. Plaintiff's assertion that the ALJ erred by discrediting Plaintiff's testimony and Plaintiff's husband's affidavit both concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms**

Plaintiff avers that the ALJ's stated reasons for discrediting Plaintiff's testimony and Plaintiff's husband's affidavit were not supported by substantial evidence. An ALJ "must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms."[2] Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal punctuation and citation omitted). However, the ALJ "does not

---

[2] This requirement is not as stringent as it seems. The Court of Appeals for the Eleventh Circuit has upheld an administrative law judge's credibility finding regarding a claimant's testimony as to her limitations as sufficient, even when that finding is only implied, when "it is clear" and the administrative law judge "considered [the claimant's] subjective complaints in light of the record as a whole and adequately explained his decision not to fully credit [the claimant's] alleged limitations on her ability to work." Brown v. Comm'r of Soc. Sec., 442 F. App'x 507, 514 (11th Cir. 2011).

5

need to cite particular phrases or formulations." Id. (internal punctuation and citation omitted).

The ALJ noted that, in documents submitted in connection with her disability application, Plaintiff alleged that her common variable immunodeficiency requires the injection of antibodies which causes weakness, colds, and aggravation of her fibromyalgia. (Tr. at 22, 158). The ALJ also chronicled the following of Plaintiff's complaints: joint pain, thyroid problems, extreme exhaustion, need to stay in bed for most of the day after receiving treatment, right shoulder pain affecting her ability to lift and causing her blood pressure to rise, memory problems, sleep problems, and worsening pain during cold weather. (Tr. at 22). The ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the residual functional capacity assessment he announced. (Id.) (emphasis omitted).

In support of his decision to find Plaintiff's testimony incredible, the ALJ relied on the opinion of Dr. Runyan, a consultative internist, that Plaintiff's physical findings were inconsistent with her reported symptoms; Plaintiff's inconsistent statements regarding her daily activities; and a lack of objective medical records supporting Plaintiff's alleged physical problems. (Tr. at 22–25). For example, the ALJ cited Dr. Runyan's June 2009 note which stated, "[t]he patient's physical findings were not consistent with her reported symptoms." (Tr. at 23, 367). The ALJ also cited a July 2009 statement from Dr. Melvin Haysman, Plaintiff's treating physician, that stated Plaintiff was "feeling a [little] bit more pizzazz." (Tr. at 23, 463). Furthermore, the ALJ determined that "[t]hese problems are not mentioned prominently in the medical records" and characterized Dr. Melvin's

"support for her allegations of severe exhaustion after treatments" as "lukewarm." (Tr. at 23). "The ALJ provided "explicit and adequate reasons for discrediting" Plaintiff's testimony. Dyer, 395 F.3d 1210.

In support of his decision to find Plaintiff's husband's affidavit incredible in its entirety, the ALJ noted that "he is hardly a neutral witness" and that his statements are "completely at odds with the function reports they both provided earlier[.]" (Tr. at 24) (emphasis omitted). The ALJ provided "explicit and adequate reasons for discrediting" Plaintiff's husband's affidavit. Dyer, 395 F.3d 1210.

## II. Plaintiff's assertion that the ALJ erred by discrediting two residual functional capacity evaluations performed by Plaintiff's treating physicians

Plaintiff avers that the ALJ erred by discrediting two residual functional capacity evaluations performed by Plaintiff's treating physicians. Specifically, Plaintiff argues that the ALJ did not have "good cause" to discredit the evaluations.

The opinion of a "treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted). "Good cause" exists where the doctor's opinion "was not bolstered by the evidence, or where the evidence supported a contrary finding[, . . . or] where the doctors' opinions were conclusory or inconsistent with their own medical records." Id. (citations omitted). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." Id. (citation omitted). See also Watkins v. Comm'r of Soc. Sec., 2012 WL 399995 *3 (11th Cir. 2012) (finding that the administrative law judge's omission of a treating physician's sit/stand limitation from the claimant's residual

7

functional capacity "[w]ithout a clear explanation" precluded the court from "determin[ing] whether the ALJ's ultimate decision on the merits was rational and supported by substantial evidence").

In the 2010 residual functional capacity evaluation, Plaintiff's treating physicians' conclusions were supported by plaintiff's medical conditions. (Tr. at 499). Plaintiff has had those severe impairments since at least June 9, 2008, her disability onset date. (Tr. at 20). With regard to the 2010 evaluation, the ALJ stated, "it is obvious [those physicians] have zero knowledge of the claimant's ability to perform medium level activities of daily living" because "[p]er their opinions, she cannot do any of the things she and her husband admitted her doing." (Tr. at 25). The ALJ cited the November 2008 function reports submitted by Plaintiff and her husband as evidence of record that is contradictory to the 2010 residual functional capacity evaluation. (Id.). In those reports, Plaintiff and her husband described Plaintiff's ability to perform activities inconsistent with the 2010 evaluation's conclusion that Plaintiff is "permanently disabled from employment."[3] (Tr. at 505); (see also Tr. at Exhibit 4E and 6E). The 2008 function reports support a finding contrary to the conclusion of the 2010 evaluation; therefore, the ALJ provided "good cause" for discrediting the 2010 residual functional capacity evaluation.

With regard to the 2008 residual functional capacity evaluation, the ALJ stated that Plaintiff "admitted to performing medium exertional tasks at her April 2010 hearing"

---

[3] It should be noted that legal conclusions, such as whether a claimant is permanently disabled, are reserved to the Commissioner. Mansfield v. Astrue, 395 F. App'x 528, 530 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1527(e) and 416.927(e)); Lanier v. Comm'r of Soc. Sec., 252 F. App'x 311, 314 (11th Cir. 2007) ("The ALJ correctly noted that the opinion that Lanier was unable to work was reserved to the Commissioner. See 20 C.F.R. § 404.1527(e) (explaining that a physician's opinion that a claimant is 'disabled' or 'unable to work' is not a medical opinion and that this opinion is reserved exclusively to the Commissioner).").

8

even though the 2008 evaluation asserts that Plaintiff "is limited to sedentary work." (Tr. at 25). The ALJ noted that, at the April 2010 hearing, Plaintiff testified that she helps with cooking and washes light clothes such as towels and socks. (Tr. at 25, 44). Plaintiff's testimony supports a finding contrary to the conclusion of the 2008 evaluation; therefore, the ALJ provided "good cause" for discrediting the 2008 residual functional capacity evaluation.

### III. Plaintiff's assertion that the ALJ erred by not finding Plaintiff disabled as a matter of law because of pain and other subjective symptoms

Plaintiff avers that the ALJ should have found her disabled as a matter of law because her subjective testimony supported by medical evidence satisfied the "pain standard," which is sufficient to support a finding of disability. The ALJ determined that Plaintiff's subjective testimony was incredible, and his decision met the standard for discrediting Plaintiff's testimony, as explained previously. Therefore, the ALJ did not err by not finding Plaintiff disabled as a matter of law.

### IV. Plaintiff's assertion that the ALJ erred by not finding Plaintiff presumptively disabled under Listing 14.07

Plaintiff avers that the ALJ erroneously failed to find that she meets or medically equals the requirements for presumptive disability as stated in Listing 14.07, dealing with immune deficiency disorders. Listing 14.07, which describes the criteria to qualify for benefits based on an immune deficiency disorder, states that a claimant must have a disorder as described in 14.00E along with

> C. Repeated manifestations of an immune deficiency disorder, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

9

> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social function.
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 14.07C.

The ALJ found that Plaintiff has the severe impairment of immunoglobulin (IGA) deficiency. (Tr. at 20). Plaintiff states that this finding "satisf[ies] the first prong of the 14.07 listing." (Doc. No. 13, p. 19). Plaintiff argues that "if full credit is given to the Plaintiff's testimony concerning her symptoms . . . , then her condition meets the 14.07 listing[.]"[4] (Id.). Plaintiff argues that she has repeated manifestations of an immune deficiency disorder; that she has consistently complained of severe fatigue and malaise; and that she has marked limitations in activities of daily living, maintaining social function, and completing tasks in a timely manner.

The ALJ determined that Plaintiff is not limited in activities of daily living, maintaining social function, or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace at the marked level.[5] In each of these areas, the ALJ found that Plaintiff has mild limitation. In reaching this conclusion, the ALJ relied on Plaintiff's 2008 function report. (Tr. at 21). In his discussion of Plaintiff's daily living, the ALJ noted that Plaintiff reports being able to prepare meals and daily clean at least one room of the house; clean up after pets; do laundry and ironing; go out daily with her dog; take care of her personal needs; drive; and shop in stores, by phone, by mail, and by

---

[4] The ALJ determined that Plaintiff's subjective testimony was incredible, and his decision met the standard for discrediting Plaintiff's testimony, as explained previously. This Court cannot reweigh the evidence anew.

[5] The ALJ made this determination within the context of evaluating whether Plaintiff is disabled under Listing 12.00C, dealing with mental disorders. (Tr. at 20). However, the ALJ's analysis is relevant because his decision in each area is based on Plaintiff's physical capabilities in addition to her mental capabilities.

computer. (Id.). The ALJ's list of Plaintiff's capabilities is largely supported by Plaintiff's 2008 function report. (Tr. at 189–191). In his discussion of Plaintiff's social functioning, the ALJ noted that Plaintiff reports being able to shop in stores, attend church and sometimes sing in the choir, occasionally go out to eat with friends, and regularly talk on the phone with friends and relatives. (Tr. at 21). Again, the ALJ's list of Plaintiff's capabilities is largely supported by Plaintiff's 2008 function report. (Tr. at 191–92). With regard to concentration, persistence, or pace, the ALJ noted that Plaintiff reports being able to, in addition to the activities listed in relation to the other areas, spend time reading, playing cards, and using the computer. (Tr. at 21). Again, the ALJ's list of Plaintiff's capabilities is largely supported by Plaintiff's 2008 function report. (Tr. at 192, 194). The ALJ's finding that Plaintiff suffers mild limitation in each of the three relevant areas is supported by substantial evidence. Because the ALJ's determination that Plaintiff is not limited in activities of daily living; maintaining social function; or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace at the marked level is supported by substantial evidence, the ALJ did not err by not finding Plaintiff presumptively disabled under Listing 14.07.

**V. Plaintiff's assertion that the ALJ erred by finding that Plaintiff has the residual functional capacity to perform medium work with some specific limitations**

Plaintiff avers that the ALJ erred by finding that Plaintiff has the residual functional capacity to perform medium work with some specific limitations. Specifically, Plaintiff argues that the ALJ erroneously based his finding as to Plaintiff's residual functional capacity on the opinion of non-examining physicians and on his construction of Plaintiff's 2008 function report and Plaintiff's hearing testimony. Plaintiff asserts that

the ALJ erred in according greater weight to the non-examining physicians than to the residual functional capacity evaluations provided by Plaintiff's treating physicians. Plaintiff also asserts that the ALJ erred in discrediting much of her hearing testimony.

Plaintiff is correct in that more weight should be given to the opinion of a medical expert who has examined her than to the opinion of a medical expert who has not examined her. 20 C.F.R. § 416.927(d)(1). However, the ALJ chose to give little weight to the two residual functional capacity evaluations performed by Plaintiff's treating physicians, and he showed "good cause" for his decision, as explained previously. Additionally, the ALJ determined that Plaintiff's subjective testimony was incredible, and his decision met the standard for discrediting Plaintiff's testimony, as explained previously.

The ALJ states that he relied on the opinions of the State Agency reviewing physicians in reaching his determination that Plaintiff has the residual functional capacity to perform work at the medium exertional level, with the some limitations. (Tr. at 21, 25). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R § 404.1567(c). The State Agency reviewing physicians found that Plaintiff can occasionally lift and/or carry 50 pounds and can frequently lift and/or carry 25 pounds. (Tr. at 369, 490). The ALJ's residual functional capacity determination is supported by substantial evidence.

AO 72A
(Rev. 8/82)

### VI. Plaintiff's assertion that the ALJ erred by finding that the Plaintiff's residual functional capacity does not preclude her from performing her past relevant work

Plaintiff avers that her testimony and the residual functional capacity evaluations submitted by her treating physicians establish that she lacks the residual functional capacity to perform any of her past relevant work. As previously determined, ALJ's residual functional capacity determination is supported by substantial evidence. According to the Dictionary of Occupational Titles, a bookkeeper position is sedentary work. U.S. DEP'T OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES 210.382-014, 1991 WL 671821 (4th ed. 1991). An office manager position is also sedentary work. Id. at 169.167-034, 1991 WL 647430. A child support officer position is sedentary work. Id. at 195.267-022, 1991 WL 671594. Due to Plaintiff's testimony that she had to lift up to 50 pounds occasionally as a child support officer, this job would be a medium exertional level as performed by Plaintiff. (Tr. at 75). A stock control clerk position is light work. U.S. DEP'T OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES 219.387-030, 1991 WL 671981. A quality controller assistant position is sedentary work. Id. at 210.382-014, 1991 WL 671821.[6] According to the vocational expert, a person with a residual functional capacity to perform work at the medium exertional level with Plaintiff's limitations, can perform each of these jobs. (Tr. at 76–77).[7] The vocational expert's testimony constitutes substantial evidence in support of the ALJ's finding that Plaintiff

---

[6] The vocational expert testified that quality controller assistant is "essentially the same as the bookkeeping position" and has "the same DOT code." (Tr. at 76).

[7] Plaintiff asserts that the vocational expert agreed that Plaintiff's testimony, if credited by the ALJ, would establish that she lacks the residual functional capacity to perform any of her past relevant work. (Doc. No. 13, p. 23) (citing Tr. at 78). The ALJ determined that Plaintiff's subjective testimony was incredible, and his decision met the standard for discrediting Plaintiff's testimony, as explained previously.

AO 72A
(Rev. 8/82)

can perform her past relevant work. See Lee v. Comm'r of Soc. Sec., 448 F. App'x 952, 953 (11th Cir. 2011).

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

**SO REPORTED** and **RECOMMENDED**, this 25th day of October, 2012.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)